United States District Court
Southern District of Texas
**ENTERED**
November 21, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-00476 |
| | § | |
| JORGE GONGORA; dba BUCHANAN'S | § | |
| BAR, | § | |
| | § | |
| Defendants. | § | |

## ORDER OF DEFAULT JUDGMENT

The Court now considers J&J Sports Productions, Inc.'s ("Plaintiff") motion for final default judgment.[1] After duly considering the record and authorities, the Court **GRANTS** the motion as follows.

### I.  BACKGROUND

Plaintiff is a "license company which is exclusively authorized to sub-license" a particular set of boxing matches.[2] Jorge Gongora d/b/a Buchanan's Bar ("Defendant") allegedly broadcasted these boxing matches publically without the proper licensing.[3] Plaintiff sued Defendant in federal court on August 10, 2016 for violations of the Federal Communications Act, 47 U.S.C. §§ 553 or 605.[4] Defendant was served on September 28, 2016,[5] but never answered. Plaintiff moved for default entry on November 14, 2016,[6] and the Court granted the

---

[1] Dkt. No. 10.
[2] Dkt. No. 1. at p. 1.
[3] *Id*. at p. 3.
[4] *Id*. at p. 4.
[5] Dkt. No. 5. at p. 2.
[6] Dkt. No. 9.

motion.[7] The Court Clerk entered default the next day.[8] Plaintiff also moved for default judgment on November 14, 2016. The Court now turns to its analysis on the motion for default judgment.

## II.   LEGAL STANDARD

Even when, as here, default is entered against a defendant, "a plaintiff is not entitled to a default *judgment* as a matter of right."[9] Instead, "the court must [first] assess the merits of plaintiff's claims and find [a] sufficient basis in the pleadings for the judgment."[10] This is done by looking to the plaintiff's complaint and determining whether the "factual allegations, taken as true, state a claim against [the defendant]."[11] As a strict liability statute, Communications Act Section 605 violations can be proved merely by showing "that the event was shown in the defendant's establishment without the plaintiff's authorization."[12] If the plaintiff's claim is meritorious, the court will determine damages. Although the Fifth Circuit often requires district courts to hold evidentiary hearings to determine damages,[13] a district court may rely on detailed affidavits establishing the necessary facts, particularly when "the amount claimed is a liquidated sum or one capable of mathematical calculation."[14]

In these types of cases, courts calculate damages in the following manner. The aggrieved party may elect either actual or statutory damages.[15] Statutory damages must be no less than $1,000, but no more than $10,000.[16] Courts determine what award within this range is just.[17] There are two approaches courts can take when determining the just amount: "[o]ne approach is

---

[7] Dkt. No. 11.
[8] *See* Dkt. No. 12.
[9] *United States v. Donalson*, CIV.A. H-13-00153, 2014 WL 7524985, at *1 (S.D. Tex. Dec. 10, 2014) (emphasis added) (citing *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).
[10] *Donalson*, 2014 WL 7524985, at *1 (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[11] *Trang v. Bean*, 600 Fed. Appx. 191, 194 (5th Cir. 2015).
[12] *Joe Hand Promotions, Inc. v. Lee*, CIV.A. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012).
[13] *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992).
[14] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (citation omitted).
[15] 47 U.S.C.A. 605(e)(3)(C)(i) (West).
[16] 47 U.S.C.A. 605(e)(3)(C)(i)(II) (West).
[17] *Id.*

to base the award of damages on the number of patrons in the establishment at the time of the violation . . . . Another method is to award a flat sum for damages."[18] The first approach—per-patron—"seeks to estimate the overall profits derived from the violation . . . ."[19] Lost profits usually consist of the plaintiff's foregone licensing fee. However, "capping damages at the cost of licensing fees can potentially encourage commercial establishments to violate the law, since liability will never exceed what is paid in the open market."[20] Thus, courts generally determine what the licensing fee would have been for the defendant in question, and then award *more* than this amount as the statutory penalty for purposes of deterrence.[21]

Additionally, if the court finds that "the violation was committed willfully *and* for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award . . . by an amount of not more than $100,000 for each violation . . . ."[22] Generally, courts calculate this increase by estimating the aforementioned statutory damages, and then multiplying this number by any factor from three to seven.[23] Moreover, Section 605 provides for attorneys' fees, stating that a court "*shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[24] Attorneys' fees in this context are calculated by determining the Lodestar fee (*i.e.,* number of work hours multiplied by a reasonable hourly-rate),[25] and then adjusting this fee up or down in light of the twelve *Johnson* factors.

---

[18] *J&J Sports Productions, Inc. v. Salazar*, 7:15-CV-392, 2016 WL 3067441, at *4 (S.D. Tex. June 1, 2016).
[19] *Id.*
[20] *Id.*
[21] *See Entm't by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (finding foregone licensing fee to be $1,500, but then finding statutory penalty to be $5,000 for purposes of deterrence).
[22] 47 U.S.C.A. 605(e)(3)(C)(ii) (West).
[23] *See Garden City Boxing Club, Inc. v. Gomez*, CIV.A. B-05-249, 2006 WL 1663358, at *4 (S.D. Tex. June 5, 2006) (collecting cases).
[24] 47 U.S.C.A. 605(e)(3)(B)(iii) (West) (emphasis added).
[25] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

### III.   APPLICATION

A.  *Liability*

Plaintiff moves for default judgment pursuant to 47 U.S.C. § 605,[26] and supports its claims with the following allegations from its complaint:

> Plaintiff is the license company exclusively authorized to sub-license the closed-circuit telecast of the [boxing matches in question].[27]

> Defendant Jorge Gongora . . . held the license/permit issued by the Texas Alcoholic Beverage Commission for the establishment known as Buchanan's Bar, located at 107 E. Ferguson St., Ste. F, Pharr, TX 78577 (the "Establishment"); owned and/or operated the Establishment; had a right and ability to supervise the activities of the Establishment . . . .[28]

> The [boxing matches] could only be exhibited in a commercial establishment, if the establishment was contractually authorized to do so by Plaintiff.[29]

> Defendant did not, however, contract with Plaintiff or any of its agents, to obtain the rights to broadcast the [boxing matches].[30]

> On September 14, 2014 . . . Defendant willfully intercepted or received the intercepted communication of the [boxing matches].[31]

> Defendant then . . . published said communication . . . to the patrons within the establishment.[32]

> Defendant was not authorized to intercept, receive or transit the communication of the [boxing matches] . . . .[33]

The Court is satisfied that these statements, taken together as true, state a claim against Defendant because they establish that "the event was shown in the defendant's establishment

---

[26] Dkt. No. 10. at p. 3.
[27] Dkt. No. 1. at p. 2.
[28] *Id.* at p. 1.
[29] *Id.*
[30] *Id.* at p. 3.
[31] *Id.*
[32] *Id.*
[33] *Id.* at p. 4.

without the plaintiff's authorization."[34] Thus, a violation of Section 605 has been established as a matter of law. The Court now turns to its analysis of the damages.

    B.  *Damages*

      Plaintiff has elected to seek statutory damages under the Federal Communications Act Section 605, enhancement of these damages on the grounds that the violation was willful and motivated by financial gain, as well as attorneys' fees.[35] The Court begins by determining what baseline statutory damages—between $1,000 and $10,000—are just in this case. The Court finds that using the per-patron method is appropriate because Plaintiff has supplied the Court with sufficient information to objectively calculate Plaintiff's lost profit—*i.e.*, the foregone licensing fee. The Court also determines that it may rely on evidence submitted to make its determination, and need not hold a hearing, because the damages are capable of mathematical calculation.

      Plaintiff has supplied an affidavit by its auditor, Leslee Schlieper, who visited Defendant's establishment on the night in question.[36] She claims the bar capacity was about fifty (50) and that she counted twenty-nine (29) patrons in the bar at most.[37] According to Plaintiff's licensing fee sheet, Defendant would have had to pay Plaintiff a flat $2,200 fee in order to air the boxing matches to this number of people in an establishment of this size.[38] However, merely imposing the fee Plaintiff *should have paid in the first place* will not suffice to deter it from committing the same violation in the future. Thus, the Court finds the just statutory penalty to be $4,400—twice the licensing fee.

---

[34] *Salazar*, 2012 WL 1909348, at *3.
[35] Dkt. No. 10 at pp. 6–10.
[36] *See* Dkt. No 10-1 at p. 20.
[37] *Id.* at p. 21.
[38] *Id.* at p. 6.

The Court also finds that Plaintiff's violation was done willfully and "for purposes of direct or indirect commercial advantage or private financial gain,"[39] and thus that enhancement of the $4,400 penalty is appropriate. By defaulting, Defendant has effectively admitted the allegation against him that his violation was willful.[40] Moreover, the odds of an accidental violation are too small to reasonably entertain. Plaintiff notes that the intercepted signal was scrambled, and could only be decoded using special equipment designed for that purpose.[41] One district court has artfully noted that "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."[42] It is thus self-evident, based on the fact that Defendant displayed Plaintiff's licensed boxing matches in his bar, that Defendant intercepted Plaintiff's licensed boxing match *willfully*.[43]

It is equally self-evident that this violation was committed for commercial advantage or private financial gain. Why else would Defendant—the owner of a for-profit bar—willfully violate federal law in order to air to his patrons expensive, prime-time boxing matches? Moreover, Leslee Schlieper's affidavit states that Defendant's establishment rated "good," and was selling beverages to patrons that evening.[44] Under such circumstances, courts have consistently inferred an intent to personally gain financially or to gain a commercial advantage.[45] This Court follows suit, and thus trebles the $4,400 statutory penalty to arrive at $13,200.

---

[39] 47 U.S.C.A. § 605(e)(3)(C)(ii) (West).

[40] Dkt. No. 1. at p.3.

[41] Dkt. No. 1. at p. 3.

[42] *Gomez*, 2006 WL 1663358, at *3 (quoting *Time Warner Cable v. Googies Luncheonette, Inc*. 77 F.Supp.2d 485, 490 (S.D.N.Y.1999)).

[43] *See* Dkt. No. 10 ("there must be some wrongful action, such as using an unauthorized decoder, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the event into the establishment, or moving an unauthorized decoder or satellite card from its authorized location to the establishment.").

[44] Dkt. No. 10-1 at pp. 20–21.

[45] *See Joe Hand Promotions, Inc. v. Ol' River Hideaway, LLC*, 5:15-CV-187-DAE, 2016 WL 590251, at *3 (W.D. Tex. Feb. 11, 2016); *Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 U.S. Dist. LEXIS 104979 (S.D. Tex. July 27, 2012) (Hoyt, J.), *aff'd* 544 Fed. Appx. 444 (5th Cir. Tex. 2013); *G&G Closed-Circuit Events, LLC v. 10 de Mayo Mexican Grill and Bar LLC*; Civil Action No. 1:14-cv-00031-RC (E.D. Tex. Dec. 17, 2014) (Clark, J.) (Order

Furthermore, 47 U.S.C. § 605 (e)(3)(B)(iii) mandates that this Court also award "the recovery of full costs, including awarding reasonable attorneys' fees . . . ."[46] Plaintiff's counsel has submitted an affidavit stating that he worked on the case for four hours,[47] and also submits the *Texas Lawyer 2014 Annual Salary & Billing Survey* as evidence that his reasonable rate is $250 per hour.[48] Thus, the Court finds that reasonable attorneys' fees are $1,000. The court also finds this number unchanged in light of the *Johnson* factors.

Plaintiff's counsel also seeks attorneys' fees conditioned upon potential post-judgment litigation.[49] The Court approves as reasonable the following conditional attorneys' fees:

- $10,000 in the event Defendant files a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-trial motion that does not result in reversal of the judgment obtained in this action;

- $15,000 in the event Defendant files an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the judgment obtained in this action;

- $5,000 in the event a defendant files a motion for rehearing or reconsideration in the Fifth Circuit Court of Appeals that does not result in a reversal of the judgment obtained in this action;

- $5,000 for making and/or responding to a petition for writ of certiori to the United States Supreme Court that does not result in a reversal of the judgment obtained in this action;

- $10,000 for an appeal to the United State Supreme Court in the event a writ of certiorari is granted and does not result in a reversal of the judgment obtained in this action; and

---

Granting in Part Plaintiff's Motion for Summary Judgment); *J&J Sports Prods. v. Tilakamonkul*, 2011 U.S. Dist. LEXIS 62120 at *9-10 (E.D. Cal. June 10, 2011).
[46] 47 U.S.C.A. § 605 (e)(3)(B)(iii) (West).
[47] Dkt. No. 10-1 at p. 31.
[48] *Id* at p. 44. The Court observes that Plaintiff's counsel is has fourteen years of litigation experience, and the average hourly rate at even the smallest law firms for 7th year associated is $263 per hour. Thus, Mr. Diaz's hourly rate is easily $250 per hour, if not more.
[49] *Id*. at p. 34.

- $2,500 for collection of the judgment rendered in this case, should Plaintiff obtain a writ of execution, writ of garnishment, writ of attachment or other process.

Plaintiff also seeks an injunction that "enjoins Defendant from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act."[50] However, this request is futile because it is overly-broad and requests nothing more of Defendant than the law already does. This request is denied.

## IV. HOLDING

The Court **GRANTS** Plaintiff's default judgment motion and awards Plaintiff $13,200, plus $1,000 in attorneys' fees, along with the conditional attorneys' fees listed above. Post-judgment interest shall accrue at a rate of 0.70%.[51] The Court **CANCELS** the initial pretrial conference currently set for December 13, 2016.[52] This is a final judgment.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of November, 2016.

_____
Micaela Alvarez
United States District Judge

---

[50] Dkt. No. 10 at p. 10.
[51] *See* 28 U.S.C.A. § 1961 (West) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); *see also* http://www.txs.uscourts.gov/page/post-judgment-interest-rates-2016.
[52] Dkt. No. 8.